UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- x

DAVIDSON CHUKWUKA,

                              Plaintiff,

    - against -

CITY OF NEW YORK, NEW YORK CITY HUMAN
RESOURCES ADMINISTRATION, and RICHARD
BECK, DIRECTOR OF BUREAU OF
RECONCILIATION AND CONTROL, NEW YORK
CITY HUMAN RESOURCES ADMINISTRATION
FINANCE OFFICE and SHERRY BERKOWITZ,

                            Defendants.

--------------------------------------------------------------------- x

**DEFENDANTS'
STATEMENT OF
UNDISPUTED FACTS
PURSUANT TO LOCAL
CIVIL RULE 56.1**

05 Civ. 4331 (MGC)

           Pursuant to Local Rule 56.1 of the Civil Rules of this Court, defendants submit their statement of material facts as to which there is no genuine issue of fact to be tried:

           1. Plaintiff, a Black male of Nigerian national origin, employed by the New York City Human Resources Administration ("HRA"), brings this action pursuant to Title VII, 42 USC § 2000 and 42 USC §1981 as well as State and City Human Rights Laws asserting a claim of discrimination between May 2002 and August 2004 based on his race and national origin. Specifically, plaintiff alleges that Richard Beck, the Director of the HRA Bureau of Reconciliation and Control ("BORAC"): a) in May 2002 did not immediately approve a leave of absence to allow plaintiff to go to Nigeria for the funeral of his brother nor did Beck show any sympathy for such death; b) in or about February 2003 screamed at plaintiff while plaintiff was in Beck's office for a private meeting discussing an error in a report by threatening to fire or demote plaintiff and referring to plaintiff as a "foreigner" and "you African"; c) in or about April 2003 altered plaintiff's evaluation form from "outstanding" to "very good" after the evaluation

had already been signed by plaintiff; d) in or about April 2003 requested Robert Martin, then plaintiff's direct supervisor, to write things about plaintiff which would be harmful to him; e) in September 2003 disapproved plaintiff's vacation request for 20 days and instead approved such vacation request for 15 days; f) in or about March 2004 filled out an evaluation form and gave plaintiff a rating of "good" prior to the immediate supervisor giving plaintiff the rating; h) in April 2004 summoned plaintiff to his office and screamed at plaintiff for being away from his desk for a half hour, demanded that plaintiff sign an unidentified document and refused to speak to plaintiff directly, but rather spoke to plaintiff through a secretary; and i) in July 2004 admonished plaintiff for taking an extra hour on a lunch break and then docked him one hour's pay. See, Exhibit "Z", Complaint, ¶¶18-46.[1]

**Background**

2.      HRA hired plaintiff in September 1990 as a provisional case manager. See Exhibit "A", Excerpts from the Transcript of the deposition of plaintiff Davidson Chukwuka taken in this action on December 7, 2006 ("Chukwuka Dep."), 61:11-16.

3.      Subsequently plaintiff passed several civil service examinations and was appointed as a permanent Staff Analyst and assigned to Level II. Id., 61:13-62:17; 64:7-14.

4.      Defendant Richard Beck was assigned to the HRA Bureau of Reconciliation and Control ("BORAC") in or about 2000.  See Exhibit "B", Excerpts from the Transcript of the deposition of defendant Richard Beck taken in this action on December 12, 2006 ("Beck Dep.") 40:13-14.

5.      In October 2002, defendant Beck became the Acting Director of BORAC. See Exhibit "A", Chukwuka Dep., 40:8-19.

---

[1] Unless otherwise indicated, the exhibits are annexed to the Declaration of Isaac Klepfish, dated March 1, 2011, and submitted herewith.

6.     From 2002 until her retirement in March 2005, defendant Sherry Berkowitz was Assistant Deputy Commissioner in the Finance Office of the New York City Human Resources Administration.   See Exhibit "D", Excerpts from the Transcript of the deposition of defendant Sherry Berkowitz taken in this action on December 23, 2010 ("Berkowitz Dep."), 7:5-8:6; 13:2-9.

7.     Assistant Deputy Commissioner Berkowitz supervised three divisions, one of which was BORAC which was headed by Director Beck.  Id., 8:7-9:17.

8.     In April 2001, plaintiff was assigned to the accounting unit in BORAC. See Exhibit "A", Chukwuka Dep., 65:1-20.

9.     Director Beck interviewed plaintiff for the position at BORAC and approved plaintiff's hiring into BORAC.  See Exhibit "B", Beck Dep. 42:3-21.

10.     At the time plaintiff starting working at BORAC his supervisor was Edith Barrow.  See Exhibit "A", Chukwuka Dep., 65:21-23.

11.     At that time, Director Beck was the immediate supervisor of Ms. Barrow. Id., 65:8-25.

12.     As Director of BORAC, Director Beck had the final say on all staff evaluations and had to sign off on all staff evaluations as the "reviewer."  See Exhibit "C, Excerpts from the Transcript of the continued deposition of defendant Richard Beck taken in this action on October 16, 2007 ("Continued Beck Dep."), 79:8-80:25.

13.     After Ms. Berkowitz, became Assistant Deputy Commissioner in the HRA Finance Office, she instituted guidelines with regard to performance evaluations for the HRA Finance Office, including BORAC.  See Exhibit "D", Berkowitz Dep., 19:4-9.

14.    The guidelines were that (a) a supervisor performed an evaluation of an employee; (b) after such evaluation the supervisor was to discuss it with his supervisor for such supervisor's input and approval; and (c) once the evaluation was approved by the second level supervisor it would then be shared with the employee. Id., 21:18:22:20.

15.    If the second line supervisor disagrees with the first line supervisor's evaluation of the employee, the second line supervisor had the authority to change such evaluation. Id., 24:8-21.

**Approval of Leave For the Funeral of Plaintiff's Brother:**

16.    In May 2002, Director Beck was advised by plaintiff that plaintiff's brother died and that he needed to take time off from work to make funeral arrangements and to escort his brother's body to Nigeria. See Exhibit "A", Chukwuka Dep., 82:20-23.

17.    Director Beck approved the two and a half weeks time plaintiff requested to be off from work to travel with his brother's remains to Nigeria. Id., 71:9.

18.    After Director Beck approved the leave, plaintiff, about a week later, after completing the funeral arrangements, escorted his brother's body to Nigeria. Id.,

19.    Plaintiff testified at his deposition that he has no recollection of the names of any employees who were treated differently than he was when relatives passed away. Id., 72:7-15; 74:5-25.

**Evaluations of Plaintiff:**

20.    In September 2002, Edith Barrow, plaintiff's then direct supervisor, gave plaintiff a rating of "outstanding" for the period of October 1, 2001 through September 30, 2002. See Exhibit "P", Evaluation of plaintiff for the period October 1, 2001 to September 30, 2002.

21.     At the time this evaluation was prepared it violated agency guidelines because it was signed off by the employee before Director Beck, as the supervisor of Ms. Barrow and final reviewer, had reviewed and approved such evaluation.  See Exhibit "C", Continued Beck Dep., 58:16-24 and Exhibit "D", Berkowitz Dep., 28:10-21; 31:17-32:13.

22.     Because the evaluation, violated agency procedure, Director Beck had the right to change the evaluation.  See Exhibit "D", Berkowitz Dep., 28:10-21; 30:17-32:5; 33:6-17; 51:9-52:12.

23.     As the final reviewer of the evaluation and the supervisor of Ms. Barrow, Director Beck, disagreed with the rating of Ms. Barrow and on April 14, 2003, modified the rating of several tasks to "very good" and gave plaintiff an overall rating of "very good" for the period of October 1, 2001 through September 30, 2002.  See Exhibit "C", Continued Beck Dep., 58:16-24.

24.     This rating of Director Beck which was based on his supervision of plaintiff for part of the rating period, and was made by him because Ms. Barrow had retired from the agency and thus could not evaluate plaintiff; accordingly, Director Beck became, for such time period, the direct supervisor of plaintiff and the individual required to evaluate plaintiff. Id., 61:2-25; 78:3-20 and Exhibit "D", Berkowitz Dep., 23:25-24:7.

25.     There are several ratings below "very good."  Such ratings are "good", "marginal", "unsatisfactory" and "unratable."  Id., Exhibit "E", Evaluation of plaintiff for the period October 1, 2001 to September 30, 2002 and Exhibit "A", Chukwuka Dep., 97:16-19.

26.     Director Beck did not revise the section of the evaluation entitled "Justification for overall rating", in which it was noted:

> Mr. Chukwuka is an exemplified employee.  His
> work is always well organized, documented and

> accurate.    In addition to Mr. Chukwuka's
> assignments, he assists his supervisor in all major
> tasks with a courteous and willing manner.  He uses
> his own time when called upon to meet critical
> deadlines.  Mr. Chukwuka's assignments are always
> completed before the prescribed deadlines.    He
> works well on his own with minimal supervision.

See Exhibit "E", Evaluation of plaintiff for the period October 1, 2001 to September 30, 2002.

27.    Assistant Deputy Commissioner Berkowitz did not play any role in connection with the changing of the rating on the evaluation.  See Exhibit "A", Chukwuka Dep., 100:19-23.

28.    For the next rating period of October 1, 2002 to September 30, 2003, plaintiff's supervisor at that time, Robert Martin, on March 31, 2004, rated plaintiff's performance "good."  See Exhibit "F", Evaluation of plaintiff for the period October 1, 2002 to September 30, 2003.

29.    Director Beck reviewed the evaluation and agreed with such evaluation by signing thereto on April 1, 2004.  Id.

**Plaintiff's Vacation request**:

30.    After Ms. Berkowitz, became Assistant Deputy Commissioner in the HRA Finance Office, she instituted leave guidelines for the HRA Finance Office, including BORAC, that, in order to insure proper work coverage, vacation would be limited to no more than 15 consecutive days annual leave.  See Exhibit "D", Berkowitz Dep., 19:4-22.

31.    During her employment as the Assistant Deputy Commissioner of the HRA Finance Office, Ms. Berkowitz never approved a vacation leave request for more than 15 consecutive days.  Id., 20:3:7.

32.    In or about the Spring of 2003, Assistant Deputy Commissioner Berkowitz met with BORAC staff to explain the reasons for the policy and to reinforce it.  See Exhibit "D",

Berkowitz Dep., 55:23-56:13, Exhibit "I", E mail from Director Beck to Assistant Deputy Commissioner Berkowitz, dated September 2, 2003, and Exhibit "P", E mail from Director Beck to Davidson Chukwuka, dated September 2, 2003.

      33.    Vacation requests for employees at BORAC are initially submitted to the immediate supervisor and then are processed through channels and must ultimately be approved by Director Beck. See Exhibit "G", E mail from plaintiff to Angel Brito, dated September 2, 2003, Exhibit "H", E mail from Robert Martin to Angel Brito, dated September 2, 2003, Exhibit "I", E mail from Director Beck to Assistant Deputy Commissioner Berkowitz, dated September 2, 2003, Exhibit "J", E mail from Assistant Deputy Commissioner Berkowitz to Director Beck, dated September 2, 2003 and Exhibit "K", E mail from Director Beck to Supervisor Martin, dated September 2, 2003.

      34.    By email dated September 2, 2003, plaintiff advised his immediate supervisor, Mr. Angel Brito, that he would be taking his annual vacation from "October 14, 2003 through November 10, 2003." See Exhibit "G", E mail from plaintiff to Angel Brito, dated September 2, 2003.

      35.    By email dated September 3, 2003, Supervisor Martin advised Mr. Brito that plaintiff's vacation request would have to be approved by Director Beck. See Exhibit "H", E mail from Robert Martin to Angel Brito, dated September 2, 2003 and Exhibit "A", Chukwuka Dep., 133:16; 136:7-13.

      36.    By email dated September 3, 2003, Director Beck advised Assistant Deputy Commissioner Berkowitz that:

> Sherry, Davidson Chukwuka is requesting annual leave from 10/13/03 through 11/11/03 ( a total of 19 workdays, excluding three paid holidays) to take a vacation trip planned for Nigeria. Given your past

> request not to approve vacations longer than 3
> weeks, how do you think this should be handled.

<u>See</u> Exhibit "I", E mail from Director Beck to Assistant Deputy Commissioner Berkowitz, dated September 2, 2003.

37.   By e mail dated September 2, 2003, Assistant Deputy Commissioner Berkowitz advised Director Beck that:

> I do not want staff out of the office (other than
> health reasons) for longer than 3 weeks including
> holidays.  Who will do his accounts.

<u>See</u> Exhibit "J", E mail from Assistant Deputy Commissioner Berkowitz to Director Beck, dated September 2, 2003.

38.   By e mail dated September 2, 2003, Director Beck advised Supervisor Martin that:

> Please be advised, per Sherry Berkowitz, that staff
> are not permitted to take vacations longer than 3
> weeks (including paid holidays).  Please ask Mr.
> Chukwuka to revise his request to comply with
> these time frames….

<u>See</u> Exhibit "K", E mail from Director Beck to Supervisor Martin, dated September 2, 2003.

39.   By e mail dated September 2, 2003, Supervisor Martin advised Supervisor Brito that:

> Referencing the email below from Rich Beck, as
> well as from Sherry Berkowitz, please advise
> Davidson Chukwuka of your unit that his vacation
> request (time) can be no longer than 3 weeks, as
> noted.  Accordingly, his request should be modified
> to accommodate the policy.

<u>See</u> Exhibit "L", E mail from Supervisor Martin to Supervisor Brito, dated September 2, 2003.

40.   By e mail dated September 2, 2003, Director Beck advised Supervisor Martin that:

> Please be certain that the request is a maximum of
> 15 days (excluding weekends but including paid
> holidays)....

See Exhibit "M", E mail from Director Beck to Supervisor Martin, dated September 2, 2003.

41.     By e mail dated September 2, 2003, Supervisor Martin submitted the e mail chain showing that pursuant to BORAC policy employees at BORAC are not permitted to take vacations longer than 3 weeks.   See Exhibit "N", E mail from Supervisor Martin to Davidson Chukwuka, dated September 2, 2003.

42.     By e mail dated September 2, 2003, plaintiff advised Supervisor Martin that:

> I have been working in Finance since 1995 to
> present.  If time and policy in Finance Office have
> changed staff should be communicated about the
> change.   Vacation involving foreign trip is not
> planned overnight.  You should not enforce a policy
> after the fact.

See Exhibit "O", E mail from Davidson Chukwuka to Supervisor Martin, dated September 3, 2002.

43.     By e mail dated September 2, 2003, Director Beck advised plaintiff that:

> Sherry Berkowitz discussed the policy in detail
> when she met with BORAC staff several months
> ago.

See Exhibit "P", E mail from Director Beck to Davidson Chukwuka, dated September 2, 2003.

44.     In response to an email from plaintiff regarding the denial of his vacation request, Assistant Deputy Commissioner Berkowitz advised plaintiff that:

> Please be aware that Mr. Beck is enforcing my
> policy.  This policy was told to you when I meet
> [sic] with the BORAC staff in the springtime.  You
> say that your being gone for 1 month will not
> impact your unit.  This is not true.  I have checked
> with our personnel officer regarding a finance

> policy.  Each manager has the obligation to ensure
> that the work of their unit not be compromised.

<u>See</u> Exhibit "Q", E mail from Assistant Deputy Commissioner Sherry Berkowitz to Davidson Chukwuka, dated September 4, 2003.

45.     While plaintiff claims that the change of vacation caused him to be subjected to a surcharge, he testified at his deposition that he did not recall what the surcharge was.  <u>See</u> Exhibit "A", Chukwuka Dep., 130: 11-18.

46.     Grace Taylor was out of the office for twenty consecutive days but she was not out of the office for 20 consecutive days of annual leave and she never received permission from director Beck to take more than 15 consecutive days of annual leave.  Rather, her absence from the office was a combination of annual leave, sick leave and release time for work training.  <u>See</u> Exhibit "C", Continued Beck Dep., 154:18-155:21 and Exhibit "R", Leave Request Entries for Grace Taylor from January 1, 2002-December 31, 2004.

47.     Specifically, Grace Taylor was out of the office from August 4, 2003 through August 27, 2003.  However, on August 6, 2003 and on August 12, 2003, Ms. Taylor was not on vacation but was out of the office for official business, namely, for training (Release Time).  Additionally, she was out of the office on August 12, 2003 and on August 27, 2003 for sick leave.  <u>See</u> Exhibit "R", Leave Request Entries for Grace Taylor from January 1, 2002-December 31, 2004.

48.     For that time period, the most time for which her supervisors granted Ms. Taylor's annual leave did not exceed ten days.  <u>Id</u>.

49.     Grace Taylor, an employee at BORAC, is also a Black African American.  <u>See</u> Exhibit "B", Beck Dep., 38:21.

**Other incidents with Plaintiff:**

50.     Plaintiff claims that in April 2003, he was advised by his immediate supervisor, Robert Martin, that Director Beck had asked Mr. Martin to write things about plaintiff which would be harmful to plaintiff's career; however, plaintiff admitted at his deposition that he does not know what Director Beck told Mr. Martin to write. See Exhibit "A", Chukwuka Dep., 116:9-15; 116:22-117:24.

51.     Plaintiff also testified at his deposition that he has no knowledge if Mr. Martin actually wrote plaintiff up for anything. Id., 116:16-21.

52.     In or about July 2004, Director Beck observed that plaintiff, as well as two other staff members had improperly taken an extended taken lunch hour and that as a result there was no staff to insure adequate unit coverage.  See Exhibit "T", Memorandum from Richard Beck to Davidson Chukwuka, dated July 2, 2004, Exhibit "U", Memorandum from Richard Beck to Angel Brito, dated July 2, 2004 and Exhibit "V", Memorandum from Richard Beck to Sami Ali, dated July 2, 2004.

53.     Thus, in his July 2, 2004 Memorandum to plaintiff, Director Beck stated:

> This is to advise you that, in the absence of your supervisor, Grace Taylor, I observed that you took your lunch from 12:00 noon until 2:00 p.m. today. You left without consulting me in advance or giving any consideration to the lack of coverage in the Accounting Unit.  Since you are aware that your supervisor, Grace Taylor, as well as, Baligh Dimian and Helen Flowers, were also out on Annual Leave today, it was your responsibility to ensure that I received notification from you that you would be taking an extended one hour for lunch so that I could ensure adequate unit coverage.  Instead, the unit was left totally abandoned when you and your colleagues decided to take lunch simultaneously.

When I inquired with you as to your whereabouts, you raised your voice to me stating "You're starting with me again even though I'm getting out of here". As you know, I've discussed this issue on a number of previous occasions with your unit, and have constantly stressed the importance of ensuring adequate unit coverage ( especially during holiday periods and peak vacation times). It is obvious to me that I am unable to trust that staff is mature enough to ensure coverage on their own or to limit their lunch period to one hour.

Therefore, effective Tuesday, July 6th, 2004, I will be implementing assigned lunch hours for all the staff in the Accounting Unit. It's truly unfortunate that staff indirectly involved in this situation will be directly affected as a result of the lackadaisical attitude of some of their colleagues. Once you have been assigned a scheduled lunch hour, I fully expect that you will strictly adhere to it so that this situation does not repeat itself.

In this instance, I will be contacting OSR to ensure that you are not compensated for the one hour additional time you took off. However, please be reminded that any staff person that continually violates Agency policy by taking more than one hour for their scheduled lunch hour will be subjected to Agency disciplinary action....

See Exhibit "T", Memorandum from Richard Beck to Davidson Chukwuka, dated July 2, 2004.

54.    The same memorandum was written by Director Beck to Mr. Angel Brito and Mr. Sami Ali and both of these employees were docked pay for the extra time improperly taken. See Exhibit "U", Memorandum from Richard Beck to Angel Brito, dated July 2, 2004 and Exhibit "V", Memorandum from Richard Beck to Sami Ali, dated July 2, 2004.

55.    On July 6, 2004, Mr. Brito acknowledged the impropriety of his action by writing a memorandum to Director Beck apologizing for the problem and assuring Director Beck that the problem would not occur again. See Exhibit "W", Letter from Angel Brito to Director Beck, dated July 6, 2004.

56.    Mr. Brito is from Ecuador and Mr. Ali is from Egypt.  See Exhibit "A", Chukwuka Dep., 75:13-17.

57.    The July 2, 2004 incident was the second incident in which plaintiff had absented himself from work without authorization.    See Exhibit "S", Memorandum from Director Beck to Davidson Chukwuka, dated April 5, 2004.

58.    Plaintiff claims that during a meeting Director Beck screamed at him; however, plaintiff testified at his deposition that has no recollection of the names of Caucasian employees that Mr. Beck did not scream at for alleged errors they made in reports submitted. See Exhibit "A", Chukwuka Dep., 106:18-107:11.

59.    In August 2004, plaintiff voluntarily left BORAC and transferred to the Office of Domestic Violence and Domestic Intervention, a different unit within HRA and received a provisional promotion to the Associate Staff Analyst position with an immediate $6,000 raise.  Id., 18:18-25; 64:15-25.

60.    Plaintiff filed a plaintiff's Charge of Discrimination dated November 8, 2004 with the State Division of Human Rights.  See Exhibit "X", Charge of Discrimination filed with the New York State Division of Human Rights, dated November 8, 2004.

61.    The Charge of Discrimination is totally devoid of any allegation that Director Beck or any of other of defendant's employees made a statement or comment even remotely suggesting race or national origin based animus.  Id.

62.    By letter dated February 14, 2005, the United States Equal Employment Opportunity Commission advised plaintiff that ]:

> Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes....

<u>See</u> Dismissal and Notice of Rights letter from the United States equal Employment Opportunity

Commission, dated February 14, 2005.

Dated:     New York, New York
           March 1, 2011

 

**MICHAEL A. CARDOZO**
Corporation Counsel of the
 City of New York
Attorney for Defendants
100 Church Street, Room 2-171
New York, New York 10007
(212) 788-0897

By: _____
ISAAC KLEPFISH (IK3478)
Assistant

05 Civ. 4331 (MGC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVIDSON CHUKWUKA,

Pla

- against -

CITY OF NEW YORK, NEW YORK CITY
HUMAN RESOURCES ADMINISTRATION, and
RICHARD BECK, DIRECTOR OF BUREAU OF
RECONCILIATION AND CONTROL, NEW
YORK CITY HUMAN RESOURCES
ADMINISTRATION FINANCE OFFICE and
SHERRY BERKOWITZ,

Defendants.

**DEFENDANTS' STATEMENT OF UNDISPUTED
FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

***MICHAEL A. CARDOZO***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Isaac Klepfish*
*Tel: (212) 788-0897*
*NYCLIS No.*

*Due and timely service is hereby admitted.*

*New York, N.Y. ...................................................., 200 . . .*

*................................................................................ Esq.*

*Attorney for.........................................................................*

- 15 -