UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
DAVIDSON CHUKWUKA,

                    Plaintiff,              OPINION

          -against-
                                            05 Civ. 4331 (MGC)

CITY OF NEW YORK, NEW YORK CITY
HUMAN RESOURCES ADMINISTRATION,
RICHARD BECK, DIRECTOR OF BUREAU
OF RECONCILIATION AND CONTROL, NEW
YORK CITY HUMAN RESOURCES
ADMINISTRATION FINANCE OFFICE, and
SHERRY BERKOWITZ,

                    Defendants.

----------------------------------X

APPEARANCES:

          NNEBE & ASSOCIATES, P.C.
          Attorneys for Plaintiff
          472 Union Avenue, Suite 1000
          Williamsburg, New York 11211

          By:  Okechukwu Valentine Nnebe, Esq.

          CORPORATION COUNSEL OF THE CITY OF NEW YORK
          Attorneys for Defendants
          100 Church Street, Room 2-171
          New York, New York 10007

          By:  Isaac Klepfish, Esq.

**Cedarbaum, J.**

Davidson Chukwuka sues the City of New York, the New York City Human Resources Administration, Richard Beck, and Sherry Berkowitz for employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq., employment fraud, constructive discharge, and interference with retirement benefits under the Employment Retirement Income Security Act ("ERISA"), as amended, 29 U.S.C. § 1001 et seq.  Defendants move for partial summary judgment on the Title VII claim on the ground that Chukwuka cannot establish a prima facie case of discrimination.  Defendants also filed a supplemental motion for summary judgment on the remaining claims.  Today, I granted the supplemental motion for summary judgment in open court.  For the reasons that follow, defendants' motion on the Title VII claim is granted.

**BACKGROUND**

Chukwuka is a black man of Nigerian national origin.  He started working for the New York City Human Resources Administration ("HRA") in September 1990 as a provisional case manager.  After taking a series of civil service examinations, he became a permanent Staff Analyst II in the Bureau of Reconciliation and Control ("BORAC"), one of the divisions of the HRA.  Defendant Sherry Berkowitz was the Assistant Deputy

2

Commissioner of the HRA Finance Office and defendant Richard Beck was the Director of BORAC.

In the complaint, Chukwuka alleges eight instances of discrimination on the basis of national origin, citizenship, race, and color.  For each alleged instance, the material facts are as follows.  The facts are undisputed except where noted.

First, in May 2002, Chukwuka requested two and a half weeks of leave to transport his brother's body to Nigeria and attend the funeral there.  Beck approved the leave, but he required Chukwuka to finish all of the work assigned to him before he left.

Second, in September 2002, Edith Barrow, Chukwuka's then-direct supervisor, evaluated Chukwuka for the period of October 1, 2001, through September 30, 2002.  Barrow gave Chukwuka a rating of "outstanding" for that period.  Once she completed the evaluation, she showed it to Chukwuka, and both signed it.  In April 2003, Beck modified the evaluation and changed several ratings from "outstanding" to "very good."  He did not change the section of the evaluation entitled "Justification for overall rating."

The parties dispute whether Beck had the authority to change Barrow's ratings.  In her deposition, Berkowitz testified that the evaluation policy required that an employee's immediate supervisor write the employee's evaluation and then discuss that

3

evaluation with his own supervisor.  The second-level supervisor could change the evaluation if he did not agree with the immediate supervisor's ratings or comments.  Once the second-level supervisor approved the evaluation, it was shared with the employee.  Berkowitz further testified that if the immediate supervisor had not consulted the second-level supervisor, as required by this policy, then the second-level supervisor could change the evaluation even after the employee saw it.  According to Chukwuka, however, this policy did not exist.  He points to the deposition testimony of Michelle Foulks, the commissioner of the unit.  Foulks agreed with Berkowitz that an immediate supervisor reviewed the evaluation of an employee with a second-level supervisor, but she testified that it was in the province of an immediate supervisor to evaluate an employee, irrespective of the position of the second-level supervisor.

Third, in February 2003, Beck had a meeting with Chukwuka in which Beck accused Chukwuka of making a work-related mistake. Beck threatened to demote Chukwuka, yelled several obscenities at him, and called him "you foreigner."  Later Beck discovered that people in a different department were responsible for the mistake.  According to Chukwuka, those people were Caucasian and Beck never yelled at them after he discovered that they had made the mistake.

4

Fourth, in April 2003, Beck directed Robert Martin, Chukwuka's immediate supervisor at the time, to carefully supervise Chukwuka.  To Chukwuka's knowledge, Martin never gave him a negative evaluation as a result of Beck's directive.

Fifth, on September 2, 2003, Chukwuka sent an email to his immediate supervisors, Angel Brito and Martin, advising them that he would be taking his annual leave from October 14, 2003 to November 10, 2003.  Later that day, Martin emailed Brito, copying Beck, and wrote that before Chukwuka's vacation request could be approved, they had to discuss with Chukwuka whether he could finish the work assigned to him before he left and whether he would be back in time to cover his work for the next month. Martin also wrote that after this discussion with Chukwuka, they should get feedback from Beck regarding the request.  Beck then forwarded the request to Berkowitz and asked her how she wanted to handle it given her past instructions not to approve vacations longer than fifteen days.  Berkowitz responded that she did not want employees out of the office for longer than fifteen days, and Beck informed Chukwuka, Brito, and Martin of Berkowitz's response.  On September 3, 2003, Chukwuka emailed Brito, Martin, and Beck, and wrote that he did not know about this policy.  Beck responded that Berkowitz had discussed the policy with the BORAC staff several months before Chukwuka had made his request.  Berkowitz herself then emailed Chukwuka and

wrote that Beck was enforcing her policy and that she had told
Chukwuka about the policy when she had met with the BORAC staff
in the spring.  She also wrote that it would affect Chukwuka's
unit if he were gone for a month.  Chukwuka changed his flight
to shorten his vacation, although he could not recall how much
the fee was to do this.

The parties dispute the existence of the vacation policy
and how defendants enforced it.  Chukwuka asserts that he was
never aware of the vacation policy and that it was never
distributed in writing.  Further, he states that Martin was
never aware of the policy either until Chukwuka made this
request.  He also asserts that a twenty-day vacation was
approved for Grace Taylor, another employee in the unit.
Berkowitz, however, testified in her deposition that she
established such a policy in the spring of 2003 and that she had
established a similar policy in every unit she had managed.
Also, Martin testified in his deposition that he recalled
hearing about the vacation policy at some point before Chukwuka
made his request.  And Taylor, who is African-American, was out
of the office for a combination of annual leave, sick leave, and
work training.  The work training did not count toward annual
leave, and therefore she was not out on annual leave for more
than ten consecutive days.

Sixth, on July 2, 2004, Beck sent Chukwuka a memorandum in which he noted that Chukwuka had taken a two-hour lunch that day and that, as a result, there had not been adequate coverage in the unit.  Beck also wrote that he would take steps to ensure that Chukwuka was not compensated for the additional one hour that he took for lunch.  Chukwuka denies the facts in Beck's memorandum.

Seventh, on April 5, 2005, Beck sent Chukwuka a memorandum in which he stated that Chukwuka had been gone from his workstation from 9:55 A.M. to 10:35 A.M.  Beck wrote that Chukwuka would not receive credit for the time that he was away from his workstation.  Chukwuka denies the facts in Beck's memorandum.

Eighth, in April 2004, Chukwuka received his evaluation for the period of October 1, 2002, to March 31, 2004.  All of Chukwuka's ratings were "good."  The parties dispute who prepared the evaluation.  Defendants assert that Martin, Chukwuka's immediate supervisor, prepared it.  Chukwuka denies this fact, and states that Beck actually prepared the evaluation, which, according to Chukwuka, was contrary to the evaluation policy.

In August 2004, Chukwuka transferred to the Office of Domestic Violence and Emergency Intervention as an Associate Staff Analyst, where he received a $6,000 raise.  Chukwuka's

7

position in the Office of Domestic Violence and Emergency
Intervention was a promotion from his position in BORAC.

Chukwuka filed a Charge of Discrimination with the New York
State Division of Human rights on November 8, 2004.  The United
States Equal Employment Opportunity Commission, by letter dated
February 14, 2005, made a determination that it was "unable to
conclude that the information obtained establishes violations of
the statutes," but it issued Chukwuka a notice of right to sue.
He commenced this action within 90 days of the notice.

DISCUSSION

Summary judgment should be granted "if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a).  A genuine dispute as to a material fact exists when
the evidence is such that a reasonable finder of fact could
return a verdict for the non-moving party.  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.
Ed.2d 202 (1986).  In deciding whether a genuine dispute exists,
a court must "construe the facts in the light most favorable to
the non-moving party and must resolve all ambiguities and draw
all reasonable inferences against the movant." Dallas Aero.,
Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

Title VII makes it unlawful "for an employer . . . to fail
or refuse to hire or to discharge any individual, or otherwise

8

to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In a Title VII discrimination case, a court applies the three-part burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25, 36 L. Ed.2d 668 (1973), to determine whether summary judgment is appropriate. Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).

Under the McDonnell Douglas test, the plaintiff first must establish a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he is qualified for his position; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. Id. (citing McDonnell Douglas, 411 U.S. at 802). If the plaintiff succeeds in presenting a prima facie case, the defendant may rebut that showing by articulating a legitimate, non-discriminatory reason for the employment action. Weinstock, 224 F.3d at 42. Once the defendant articulates such a reason, the plaintiff must come forward with evidence that the defendant's proffered non-discriminatory reason is mere pretext for actual discrimination. Id.

Defendants argue that because Chukwuka did not suffer an adverse employment action, he has not made out a prima facie

case of discrimination under the first part of the McDonnell
Douglas test.  An actionable adverse employment action is a
"materially adverse change in the terms and conditions of
employment," such as "termination of employment, a demotion
evidenced by a decrease in wage or salary, a less distinguished
title, a material loss of benefits, significantly diminished
material responsibilities, or other indices . . . unique to a
particular situation."  Galabya v. N.Y.C. Bd. of Educ., 202 F.3d
636, 640 (2d Cir. 2000) (citations and internal quotation marks
omitted).  Everyday workplace grievances, disappointments, and
setbacks do not constitute adverse employment actions within the
meaning of Title VII.  La Grande v. DeCrescente Distrib. Co.,
370 F. App'x 206, 211 (2d Cir. 2010).

Viewing the undisputed facts in the light most favorable to
Chukwuka, there is no evidence that Chukwuka suffered any
adverse employment action.  His eight instances of alleged
discrimination can be grouped into three categories.  First,
Chukwuka complains that Beck interfered with his evaluations on
two occasions.  In September 2002, Beck changed several ratings
in Chukwuka's evaluation from "outstanding" to "very good."  The
parties are in dispute about whether Beck had the authority to
change the ratings after Chukwuka received and signed the
evaluation.  But regardless of whether Beck had this authority,
it is undisputed that Chukwuka did not receive a rating below

10

"very good."  It is also undisputed that the evaluation had several ratings below "very good," which were "good," "marginal," "unsatisfactory," and "unratable."  In April 2004, Chukwuka received his next evaluation.  The parties dispute whether Beck or Martin actually prepared the evaluation.  It is undisputed, however, that all of the ratings in Chukwuka's April 2004 evaluation were "good."

Given this rating system, "very good" and "good" are not negative evaluations.  In any event, "a negative performance evaluation only qualifies as an adverse employment action if there are accompanying adverse consequences affecting the terms of employment."  Kaur v. N.Y.C. Health and Hosps. Corp., 688 F. Supp.2d 317, 332 (S.D.N.Y. 2010); see also Garcia v. N.Y.C. Admin. of Children's Servs., No. 03 Civ. 5271, 2007 WL 2822153, at *6 (S.D.N.Y. Sept. 27, 2007) ("[T]he evaluations were unattended by a demotion or tangible loss, and therefore did not materially alter plaintiff's employment conditions.").  Here, there is no evidence in the record that the change from "outstanding" to "very good" or an evaluation with ratings of "good" resulted in adverse consequences that affected Chukwuka's employment.  On the contrary, when Chukwuka left the unit in 2004 and transferred to the Office of Domestic Violence and Emergency Intervention, he received a promotion and a raise.

Second, Chukwuka complains of two occasions when he requested leave from work.  In May 2002, he requested leave to transport his brother's body to Nigeria.  That request was granted in full.  Chukwuka had to complete his assigned work before he left, but such a requirement does not constitute an adverse employment action.  See Galabya, 202 F.3d at 640 ("To be 'materially adverse' a change in working conditions must be more disruptive than a mere inconvenience." (citation and internal quotation marks omitted)).

In September 2003, he requested four weeks of annual leave. While the full request was denied, Chukwuka was allowed to take fifteen days of leave.  In general, the denial of vacation time does not rise to the level of an adverse employment action. Kaur, 688 F. Supp.2d at 332.  Moreover, "the denial of a single vacation request, without any indication that there was an absolute prohibition against plaintiff taking any vacation time, is not a material adverse employment action."  Roff v. Low Surgical & Med. Supply, Inc., No. 03 Civ. 3655 , 2004 WL 5544995, at *4 (E.D.N.Y. May 11, 2004) (citing Boyd v. Presbyterian Hosp. in the City of N.Y., 160 F. Supp.2d 522, 537-38 (S.D.N.Y. 2001)).  In Arroyo v. N.Y. Downtown Hosp., No. 07 Civ. 4275, 2010 WL 3861071, at *5 (E.D.N.Y. Sept. 28, 2010), the defendant denied the plaintiff's request to take a month-long vacation because it was not feasible for the plaintiff to be out

12

of the office for that length of time.  Instead, the defendant
allowed the plaintiff to take almost three weeks of vacation.
Id.  The court held that the denial of vacation under those
circumstances was not an adverse employment action.  Id.  Here,
Berkowitz told Chukwuka that he could not take four weeks of
vacation because it would impact the unit if he were gone for
that long, but she said that he could take up to fifteen days
according to her vacation policy.  The parties dispute the
existence of the vacation policy.  Even if there were no such
vacation policy, however, the denial of Chukwuka's full vacation
request, when he was still able to take up to fifteen days, is
not an adverse employment action.

Third, Chukwuka complains of Beck's excessive scrutiny and
criticism.  "[C]ourts in this circuit have found that
reprimands, threats of disciplinary action and excessive
scrutiny do not constitute adverse employment actions in the
absence of other negative results such as a decrease in pay or
being placed on probation."  Uddin v. City of New York, 427 F.
Supp.2d 414, 429 (S.D.N.Y. 2006) (citation and internal
quotation marks omitted).  There is no evidence in the record
that negative results accompanied Beck's scrutiny and criticism
of Chukwuka.  As noted above, when Chukwuka transferred to the
Office of Domestic Violence and Emergency Intervention, he
received a promotion and a raise.

13

**CONCLUSION**

For the foregoing reasons, defendants' motion for partial summary judgment on the Title VII claim is granted.  Because I have granted a supplemental motion for summary judgment on the remaining claims, summary judgment is granted dismissing the entire complaint.  The Clerk of the Court is directed to close the case.


SO ORDERED.


Dated:     New York, New York
           June 23, 2011

                                    S/_____
                                        MIRIAM GOLDMAN CEDARBAUM
                                        United States District Judge

14